Good morning, Your Honors. Matthew Cain on behalf of the Consolidated Appellant, Dennis Huff. May it please the Court, this case presents several questions of law arising from a collision that took place August 3, 2000. This morning, I want to focus the Court on four of those questions of law. As the injured party, Mr. Huff has been fighting for years to get some compensation for injuries and lost wages, but he has nothing to show for it, despite the fact that he has a determined final judgment from the State Court in 2005. Why has it taken us so long to get here? There are two reasons. First, Mr. Margulies defaulted in the underlying State Court action and then declared bankruptcy. Second, USAA, the insurer here, Mr. Margulies' insurer, has engaged in needless gamesmanship for years. Let me give you some examples. It didn't conduct an investigation, a reasonable investigation of the accident, although it had the right under the policies, and this is in Mr. Duke's testimony attached to the appendix. They were notified back in 2000, Your Honor. How long after the occurrence? The occurrence was August 3, 2000, and late 2000, I don't have the date, they were notified. The testimony from the witness from USAA, Mr. Duke, is they had a right to conduct an examination under oath to determine things like intent and declined to do so. They declined to talk to Mr. Huff, and they declined to put their insured under an examination under oath. Why is it disrelevant if it wasn't an accident? That's what's covered by the insurance policy, and as I understand it, the reason that your client was not able to recover under the insurance policy is that it was not deemed an accident. So there's two pieces to that that relate to the four issues I want to talk about. The first is race judicata, Your Honor, and what we say is the bankruptcy court should not have conducted a trial that went to the issues that were resolved, the liability and damages issues that were resolved by the state court action. The state court on appeal even said that it wasn't race judicata. That's true, Your Honor. That was not a final judgment. The appellate division held that, and as Your Honor knows, in New York, we couldn't get to the Court of Appeals under CPLR 5601 until we had a final judgment from the state court. They said it's not race judicata because whether it was accidental or not was not part of the default judgment. Well, what they held actually, Your Honor, was that it was not collaterally a stop. They did not apply the doctrine of race judicata at the appellate division, and we preserved that issue for appeal. In the intervening years, in 2014, the Court of Appeals in K22 ---- You said the intentional negligence was not litigated. That's what the appellate division decision in front of it. Correct. It was not actually litigated, which is the collateral estoppel standard. Race judicata in New York is the transactional approach, which is that anything that was subject to the underlying case and this Court held in Jacobson, anything related to the factual grouping in the underlying case or arises from the factual grouping is barred from relitigation under race judicata. And what the Court of Appeals held in K22 is that in that case, that you could litigate exemptions or exclusions from a policy that had nothing to do with the underlying case, but you could not relitigate issues that related to the underlying case. So in K22, the Court of Appeals in that case, it was a case between a lender, K2, and the borrower. Interestingly enough, the borrower's counsel, the borrower's ---- one of the borrowers was a lawyer, and K2 alleged a legal malpractice claim. The borrower said the lender was acting as its counsel and failed to record mortgages, and that constituted legal malpractice. There was a default judgment. The Court of Appeals says that default judgment is race judicata, and the issues in the underlying case that relate to liability and damages from legal malpractice cannot be relitigated. The ---- Sorry, Your Honor. I want to ask about Mr. Huff's damages. I know that Mr. Margulies, as I will discuss with his attorney, had an opportunity even after defaulting to appear at the inquest, an opportunity which he obviously declined. Tell me how this got to be $4.5 million. Your Honor, in July of 2005, there was an inquest hearing before Judge Tingling, and Judge Tingling took evidence both on the medical evidence and on the lost wages. So it was calculated based on lost wages from ---- He did not. He's been permanently disabled, Your Honor. Yes. I want to quickly turn to the ---- The question I was going to ask you is that in the bankruptcy court, how discharge was avoided was by persuading the bankruptcy court that this conduct by Mr. Margulies was intentional and malicious, and therefore not dischargeable. And that was, indeed, the position your client took. So that seems at odds with the position that it's an accident. So, Your Honor, what we've alleged is we've pled in the alternative, that either it was willful and malicious and not subject to the discharge, or it was unintentional and, therefore, an accident. So we've alleged both. We've alleged ---- This is not a classic argue in the alternative. If it's an accident, it's dischargeable, and you wouldn't be at this point at all. It's because you succeeded in showing that it was intentional and malicious that you get to argue anything about the insurance policy, or am I missing something? That's correct, Your Honor. But we say that the lower court, the bankruptcy court, and the district court applied the wrong standard to determine willfulness. The alternative means you're going to stick with one or the other. You can't like ---- the alternative doesn't mean one for one purpose and the other for the other purpose. No, I understand that, Your Honor. But as Judge Fala said in one of her decisions, there is a little bit of daylight between the bankruptcy standard and the intent standard. And so what we've alleged in the alternative is to make sure that ---- But what is that space that you say you fall into that the court did not appreciate here? I don't, Your Honor. I say that they're one and the same standard. And you feel both ---- I don't understand that answer. I'm protecting my client that if a court were to say that there's a difference between the bankruptcy standard and the New York insurance standard, that he would not walk away empty-handed. Well, it's this both intentional and malicious conduct for purposes of discharge and not an accident for purposes of the insurance policy. And an accident for purposes of the insurance policy. We say it's an accident, Your Honor. But you ---- the reason you're not discharged is because you said it was intentional and malicious and you were vindicated. Well, we have always maintained from the 3420 action in 2007 to the adversary proceeding that it is and that it was an accident and there should be coverage. We have alleged in the alternative that if it's deemed not an accident, that it should be subject ---- should not be subject to the discharge. I do want to briefly get to the ---- You didn't want it ---- you were satisfied to have it discharged? If it were deemed an accident and, therefore, covered, yes. But this isn't like Judge Reggie, I think, is pointing out, that you can plead in the alternative, but you've lost on both alternatives here. It's not like you can win on one and lose on the other. You possibly could, but the bankruptcy court found you lost on both, that it wasn't ---- it was willful and malicious and it wasn't accidental. The bankruptcy ---- How is that wrong? Well, the bankruptcy court found that we won on the willful and malicious, but it did so with a novel legal test of the successive states of consciousness, finding that it was first negligent and then reckless and then intentional within a span of a very compressed time frame. Based on his testimony, he only applied the brake after he hit him. Brakes after he hit him. Correct. But what he found was it was reckless up until the point. Let me walk you through the sequence. He starts to ---- he releases the brake. It's reckless. There's nobody in his path. Up until the time he hit him? It was reckless until the very moment before contact, says Judge Bernstein. And that's wrong as a matter of law, because if any part of the sequence ---- Because he didn't apply the brakes and he couldn't. But if any part of the sequence is reckless or negligent, it arises from the occurrence or accident and therefore is covered. And that's why we say one reason why, under both Servadone and the Air Canada case cited in our brief, that that constitutes an accident within the meaning of the policies. Any portion of the sequence is negligent or reckless, it's covered. I see my time has expired. Thank you. You have reserved some time for rebuttal. We'll hear from Mr. Margulies. Good morning, Your Honors. May it please the Court, my name is Donna Aldea and I represent Mr. Margulies on this appeal. So the first thing, this is ---- this case became so difficult because Mr. Margulies defaulted on the underlying accident and then didn't show up for the inquest. And now he ---- now he ---- what are his remedies now? Well, Your Honor, Mr. Margulies was not informed by USAA of the initial claim. And so that was the reason for the default. And one of the things that actually the district ---- And again, he was ---- He was not informed of USAA. Not only did they fail to appear to defend, but he was not advised. And what happened is ---- He wasn't personally served in the initial accident. My understanding in this ---- Margulies was the name of the accident. My understanding is that that was served at an address that was no longer his address, so he never received actual notification of the action. So he had a defense long, long since gone. And then at what is evident also in part of what the district court laments at the end of its decision is that Mr. Margulies ultimately didn't deal with the case because his young son had died right around the same time. And so he abandoned it for a while as a result of that. He then tried to move to vacate the default. And that was ultimately unsuccessful. So it was really ---- Because it wasn't timely? I believe so, Your Honor. I'm not sure of the circumstances. I think there was an appeal. He's a lawyer, too, right? Yes, Your Honor. But regardless of that, where we are right now, which is the follow-up to Your Honor's question, and I'm not sure of all of the details leading up to the exact timing and circumstances of the defaults. I know that there was a failure to defend. I know that there was an actual absence of notification, which is why he didn't appear in the first instance. And I know that ultimately he could have appealed the denial of the vacater of default and didn't because of the circumstances. Did he get notice on the inquest? I'm not sure, Your Honor. I don't believe that he did. I believe that that was part of the action from 2003 to 2005, and he was not aware of it at that time. We have a perfect defense also to the amount that the inquest concluded were Mr. Huff's damages if he wasn't notified of the hearing. Correct? Correct, Your Honor. And I believe that those issues were raised. Those issues, unfortunately, are dead now. They were raised. By whom? When? They were raised when he tried to move to vacate the default judgment, and that motion to vacate the default judgment was ultimately denied. How was that raised? In which court? State or federal? In state court, Your Honor. In state court. So now where we are, and leading to this question, is part of these circumstances were noted by the district court, and the district court actually notes that the result is troubling to it in part because of the circumstances that led to what ultimately it believed and what the bankruptcy court believed was a judgment that was a huge judgment for an injury that really probably was not so huge. But putting that part aside, where we are now with respect to the legal standard is the question of whether the debt can be discharged. Now, I will note in terms of the troubling aspect of this, you know, Mr. Margulies has noted in his papers as well in his briefs that he actually, of course, did plead guilty to a reckless assault. So he faced criminal liability and acknowledged his actions in that context. He has ultimately had to declare bankruptcy at substantial cost to him financially. He did ultimately notify, because he is an attorney, he notified the bar, the New York State bar, that, in fact, he had been convicted of a crime in the New Jersey bar as well. So all of that has been at a cost. So it's not that through his default or through the actions there was no penalty to him. There has been substantial penalty to him. And really, USAA, through its actions, he had an insurance policy. They had an obligation to notify him. They had an obligation to defend. The bankruptcy court went through in some detail why it concluded that the conduct was intentional. Correct, Your Honor. And this background is interesting, but it's in the papers. Correct, Your Honor. What's the error here? So the error here is that when we look at whether conduct in the broad sense, in broad strokes, is willful and malicious, the only question, and this was expressed by the Supreme Court in the Giger case, the only question is whether the injury was intended. In this case, the facts of the case are different from any other case where conduct was deemed to be willful and malicious, because the injury was clearly unintended. In fact, well, Your Honor, that's actually not accurate. What happened here is that he was waiting at a light. The flag man was standing in the intersection. The flag man, Huff, then walked out of the way. And when he stepped out of the way, Margulies then at that point released. He didn't accelerate. He released the brake, which caused the car to move forward because it was in drive. At that time, Huff was not in his lane, and he believed, and the bankruptcy court credited that he was not in any danger of hitting Huff. So he had no expectation of that, and he did not intend it. He was trying to get to a meeting with then-Governor Mario Cuomo. He did find, the bankruptcy court did find the intent and maliciousness in that these two playing chicken with each other, basically, that your client didn't apply the brakes when there was still an opportunity to avoid the accident. Huff walked back into the lane. Well, Your Honor, actually, because the car was moving so slowly at once two miles per hour I'm not asking you to argue the facts to us. Right. I'm not. I am asking you why the bankruptcy court could not make the finding it made. Because what the bankruptcy court did is instead of analyzing the issue as a whole, it concluded as a matter of fact, so I'm using its factual findings, that Mr. Margolies never intended to actually cause contact or to injure Huff. But there was a substantial certainty that that would happen. With respect to the — Are you saying that that part of the restatement was not adopted by the Supreme Court and shouldn't have been applied by the bankruptcy court? I'm saying that it was applied incorrectly because the way — But the standard is acceptable to you. Correct. The substantial certainty standard is acceptable. But substantial certainty, as Justice Cardozo said in Messersmith, actually has to be gauged. You have to look at the accident as a whole, not in constituent parts. So the error that the bankruptcy court made is it took a portion of the restatement that dealt with successive mental states. In other words, recklessness, negligence going into recklessness going into intentional. And instead of applying that to a mental state as a whole, it broke down the accident into momentary fragments to the point where it achieved an absurd result. Because in the end, if the bankruptcy court is right that with every negligent or reckless act, you have to look at the exact moment just before it happens, even though it's not intended, even though it's reckless. But at the exact moment before it happens, you know that it's about to happen. If that substantial certainty — You need to stop it. No. But the bankruptcy court here never found that he had the opportunity to stop it. I don't think that's how I understand the bankruptcy court's decision, when it talks about how he only applied the brakes after he hit the man. Well, Your Honor, actually, looking at the facts, you know, the bankruptcy court says that, but it never relies on an opportunity to prevent it. And because it was so momentary here, when we look at substantial certainty, he's looking at substantial certainty right before it happens. With respect to the opportunity to stop it, you know, every accident, theoretically, if the reaction time is fast enough, potentially could be stopped. What Mr. Margolis did here, which evinced his lack of intent, which is what this is all about, is he did apply the brakes. In his deposition testimony, he specifically testified, and the bankruptcy court had this before him, that he applied the brakes before he hit Huff, immediately beforehand. It wasn't enough to stop the hitting. It wasn't enough to stop it. And then when he ---- In his testimony, did you apply the brakes, Mr. Margolis, the witness, after? Yes. I didn't apply the brakes before we made contact. Did he testify to that? Correct. So his deposition testimony said he applied them immediately beforehand. It wasn't enough to stop. His trial testimony said that he applied it immediately afterwards. I think it's a distinction without a difference, and this is why. We are looking at this on the question of whether he intended to cause injury. If Mr. Margolis had intended to plow through Huff to get to his meeting, had intended to injure him, he wouldn't have been surprised. He wouldn't have applied the brakes when he made contact. He would have kept going. The fact that he applied the brakes at all conclusively shows that his intention was never to hit him. And, Your Honor, I want to also point ---- Well, Your Honor, he did. What he did is he ---- Did he continue on to his appointment? Yes. Well, he stopped, and then he looked behind him, and he saw that Mr. Huff had at that point gotten up and seemed to be okay. Huff, in fact, threw his flag at him and cursed at him. And so Mr. Margolis then continued. And so it appeared that Huff was okay. In fact, Huff stayed at work for the rest of the day and continued to work. So it appeared by all outward indications that there was no injury. Now, I'd like to direct the Court to O'Donnell, which is ---- O'Connell, rather, which is an important case on the question of not just whether you intend to make contact, but whether the nature of the surrounding circumstances reveals that you intend to cause injury. O'Connell is a case where the defendant pushed a person, and while he pushed her, he actually threatened her as well. And so the question there, she claimed that she had sustained all of these injuries from this push. And the Court in O'Connell said, well, look, the push, even though the push was an intentional act ---- Hitting someone with a car, with a moving vehicle. But, Your Honor ---- This is what prompts the Bankruptcy Court to find that Margolis' lack of intent to hit, to injure Huff gave way to a substantial certainty that he would. We're talking about not someone shoving someone. We're talking about hitting them with a car. But, Your Honor, the car was not a car that was accelerating towards someone at any speed at which you would expect an injury to occur. In Rafferty, where the injury was inherent, which the Bankruptcy Court relied on, it was inherent in the act of accelerating at a person with a car. The person was two feet away from a garage door. The defendant pressed on the accelerator and rammed into the person. Injury is inherent in that. It's expected. It's intended. Here ---- You think hitting somebody with a car, that injury is not inherent in that? If the car is moving one or two miles per hour, Your Honor, what you would expect to happen, and in fact, faced with an impossible hypothetical that actually was contrary to Mr. Margulies' statement that he never expected, he always assumed until the last minute that Huff would just get out of the way. When a car is simply going one to two miles per hour, you would expect, reasonably expect, I would posit, that a person would step out of the way of that car. And that's what Mr. Margulies testified to, and that's what the district court found. Ginsburg. Instead, Mr. Huff stepped into the path of the car. Instead, he stepped into the path of the car. And at that point, there is no finding that Mr. Margulies had time to apply the brakes. What we do know is that he didn't intend to injure him even then, because he did apply the brakes. The fact that he ---- The district court speaks about his subsequent choice not to brake when Huff failed to move out of his way. But the record, Your Honor, clearly shows. First of all, there's no testimony on this record whatsoever that there was a choice or a decision not to brake. Huff testified this all happened in the blink of an eyelash were his words. So in that amount of time, this isn't about whether the accident could have been prevented. That's not what the test is. The test that requires that an act be willful and malicious, and those two elements are separate elements, requires that not that you can stop the accident from happening, but that you are intending to cause the harm, intending to cause the injury. So in this case, Mr. Margulies was intending to get to a meeting. For him to ---- it's actually contrary to common sense. If he was trying not to be late for a meeting, the last thing he would want to do is actually hit someone with his car, because that would only have the effect of making him later to a meeting. We know his intention was not to plow through Huff, because if that had been the case, he never would have applied the brakes, nor would he have been going at 1 mile an hour. Reasonably, Your Honor, Judge Ragi, to address your question directly, when a car is moving once 2 miles per hour, which means it's simply in drive, you can put your hand on the car and you can stop it from progressing. You do not expect that an injury will occur. So it is exactly the same, exactly the same as a push. You don't expect that when you push someone an injury will occur, but more importantly, it reveals the intent. If he intended to injure him, he would have accelerated. That's what the defendant did in Rafferty. If he intended to injure him, to plow through him, he would never have applied the brakes, but he did apply the brakes. And whether he did so in the moment before, as he testified in his deposition, or in the moment after, is irrelevant. And the last part of this, and I recognize my time is up, but we spent the beginning talking about some facts. The last part of this, Your Honors, I also want to highlight that this is not just about willfulness, which is all we've been discussing here, but this is also about malice, because that is also required. And malice is an element of motive. It is an element that looks to the motive or the purpose behind an act. Joshua Margulies, the district court found, and I'm not challenging a single finding of facts by that court, and the bankruptcy court found, and I'm not challenging a single finding of facts. His motive that morning was to get to a meeting with Governor Cuomo. His motive was to not be late. His motive, his intention throughout, was to pass Huff without making any contact with him, because if he had touched him, if he had made contact with him, if he had injured him, if that had been his intent, then he never would have made his meeting. He wouldn't have been delayed by five minutes. He would have been delayed by an hour. He acted rationally at that moment when his car was rolling and someone was in front of him. Well, Your Honor, here's the problem. You can't have it both ways. So if the district court is going to parse out an incident into its constituent moments, rather than looking at it as a whole, as the Supreme Court in Geiger and as Justice Cardozo in Mesmersmith stated, then we can't parse it out in moments then either. But as a whole, you don't have to ignore the fact that these circumstances can change and move from being reckless to being malicious and intentional. Correct. But his intention would have to change, too. So when you're relying on a substantial certainty test, is the question, the substantial certainty test, is the question, is the question, is the question, the question  Now, the example that's given in the restatement is, I think, actually most instructive. In the restatement, substantial certainty deals with a situation where you have a person, A, who throws a bomb into a building intending to call to kill B. This is the actual example. He knows that C is in the building, and therefore he not only intends to kill B, but he's acting with a substantial certainty that he will kill C, even though he bears C no malice, bears C no ill will. Nonetheless, that act is intentional. He's acting intentionally as to that result because of the substantial certainty. The other example that's given, which is really analogous to this one in that same restatement, is conversely, if you have a person at night driving on a road that is a curvy road and he takes a hairpin turn around a car, knowing but recklessly disregarding a risk that he's going to ram into that car and cause injury to the occupant, that person has acted intentionally in the act but has not intended to cause injury. So that would not be willful and malicious. What happened here, what Mr. Margolis did, is the epitome of recklessness, recklessness, and recklessness by definition. Just like the driver in the restatement who took the hairpin curve disregarding the risk that he might hit the driver, so, too, Mr. Margolis here went around Huff, allowed his car to keep going, hoping that he would pass him, expecting that he would pass him, disregarding the risk that he would hit him. But his intention was never to cause injury. So it is not only not willful with respect to the injury, but more importantly, it can never possibly be malicious with respect to that injury. And that's the application of that example. Thank you very much. And you have a couple of minutes for rebuttal. Thank you. Good morning, Your Honors. Howard Smith of Olshan from Woloski on behalf of USAA. USAA did not disclaim coverage at the time the lawsuit was brought? The disclaimer was improper, correct. So why aren't you liable then under New York State law for failure to disclaim? The disclaimer was improper, but under New York State law, USAA is still entitled to litigate the issue of whether there was ever coverage in the first instance. And that is why we had – It's different from the disclaimer, though. The disclaimer is for intentional acts, right? Excuse me? The disclaimer is for intentional acts. Correct. And US – How is that different than whether it was accidental? Clear New York State law says that even in the face of an insurer breaching its duty to defend, if that's what we're going to call it, you can still relitigate the issue of whether or not there was ever coverage in the first instance. And that is what – I'm asking you on what principle does New York law distinguish the two? It can't be we said it here, but we didn't mean it there. That's the K2 decision and also the Lange decision. Lange actually sets forth what the Court of Appeals articulated would have been a best practice, which is to issue a disclaimer to defend under a reservation of rights but still holds nonetheless that coverage does not get created where it never existed in the first instance. And that's why we litigated this matter in the Bankruptcy Court, to determine whether or not this was an accident. And Mr. Huff articulated his two alternate theories. He prevailed on dischargeability. He lost as to whether or not this event taken as a whole was an accident, and now wants to, through his res judicata argument, set aside the Bankruptcy Court's trial. And I just note that this issue was not raised at the Bankruptcy Court at the trial level. It was raised for the first time on appeal to the district court. That's why the first decision is silent as to any res judicata argument. And, in fact, that's why we had a trial. There was never a motion that said this was all decided by the four corners of the underlying default judgment. Why did we have a bench trial? To determine this very issue. And at the trial and after the trial, the Bankruptcy Court made very specific factual findings that preclude the 3420 claim here against USAA. And really the key fact, and this was touched upon earlier, is there came a moment where Margulies understood that Huff was in his path, he did not have a means of escape, and yet he did not apply the brakes until after he struck it. That's not an accident. Therefore, it was intentional, not an accident? Correct. Not dischargeable? Well, I'm not here to argue the dischargeability piece. That's really, I guess, a separate question. But not covered by your policy? Not covered. Not an accident or occurrence under our policies. Whether, as the question was, whether it's a dischargeable or not. Correct. And Huff now would like to set aside the clear findings of the Bankruptcy Court. This was, there came a moment where he knew he was going to strike him. He chose not to brake. And we can parse this and say, well, it was first reckless and then it was intentional. You're operating an automobile on 6th Avenue in Manhattan, and you have a flag man in front of you, and he no longer has the means to escape, and you don't hit the brake. That's not an accident. That's not your foot slipped off the pedal. That's not I chose the accelerator by accident over the brake. His intent in the Bankruptcy Court addresses the question of subjective intent. You can still, under New York law, intend an act without intending the specific harm. And the Bankruptcy Court found exactly that. It said that, yes, Margulies did not intend to strike Huff in the conventional sense, but in a legal sense, he intended the consequences which were the direct and immediate result of his intentional act to proceed. You know, and on remand... He did have an offense, too, right? But that, correct? He was charged and convicted. He pled guilty, right? Correct. But that didn't require intent, right? No, and that's not really what we've relied on. It required recklessness. Correct. Correct. And on remand, you know, the Bankruptcy Court, on the second go-around, applied the facts to the law as articulated by the district court and found that any injury that was suffered by Huff flowed directly and immediately from Margulies' intentional act to proceed, and that because he was substantially certain that this would happen, this event, taken as a whole, could not be considered fortuitous from his perspective. And this goes to a point that counsel made earlier. There's an express finding on the fortuity piece of this that this was not a case where things happened too quickly for Margulies to stop. That is an express factual finding by Judge Bernstein. It's in his remand decision, and that's one of the factors that he argues precludes this incident from being reasonably viewed from the perspective of the insured, Margulies, as unforeseen or unexpected. Now, as I mentioned earlier, Huff sort of had a heads-I-win, tails-you-lose against the two different parties, and he prevailed on one, but that's not the resulting conclusion he wanted. He wanted to collect against the insurance company. So he now wants to throw out all the factual findings, all the conclusions that are of Judge Bernstein. Sotomayor, the factual findings by the bankruptcy court were clearly erroneous in order to throw them out. Isn't that correct? I'm sorry? In order for Huff to prevail, we would have to find that the factual findings were clearly erroneous. I agree. I agree. And on this record, they clearly are not. My point was only that Huff, in focusing almost exclusively in his reply brief on this res judicata argument, wants to just avoid the fact that there was a trial altogether, wants to just unring the bell, say, well, I lost. The testimony showed that this was an intentional act. Judge Bernstein found as much. But, no, at the end of the day, you're stuck with we're going to call this an exit, and that's just simply not what New York law holds. And, again, it was waived. Huff argues it was not waived because he raised it multiple times in his appellate briefs, but it was not raised at trial. And, lastly, I think the other question. That seems to apply as to the discharge issues here. Does it apply to the accidental aspect of your argument? The statement aspect? It does, because I think Judge Bernstein uses the fact that Margolies was substantially certain that this result would happen to conclude that that is why any injury to Huff was a direct and immediate result from what he did. And I think that's how it ties in. I agree in the first instance it's referred to in the opinion under the willful and malicious analysis. But I do think that it applies there as well. Then the last point on res judicata, and I'll move on, is that Your Honor correctly noted earlier that in this very action, when it was in State court, Huff raised similar issues. At the time he called them collateral estoppel. That was rejected by Judge Silver. It was rejected by Judge Silver on motion for re-argument. It was rejected by the First Department. And, as I said, our view is that the clear law in New York under K2 and Lange is such that that doesn't — it's not a means by which Huff can avoid the verdict and consequences of a trial he fully participated in and the evidence adduced there. Thank you. Thank you. Mr. Huff and Mr. Margolies each have retained two minutes for rebuttal. Do you mind keeping them that time? Thank you, Your Honor. Judge Pooler, we're not quarreling with the factual findings, and we believe reversal can happen even accepting the factual findings for four reasons. First, the lower courts both applied the wrong standard of res judicata. They applied the Federal standard when the New York State standard is the applicable standard under Jacobson, this Court's ruling in Jacobson. Second, the finding that Margolies acted intentionally is inherently inconsistent with the bankruptcy court's finding on two separate occasions that Mr. Margolies lacked the subjective intent to cause injury throughout the entire episode. Judge Bernstein found that — You're not quarreling with the findings of fact. You're quarreling with that ultimate finding of intent at the — just as he was striking the — your client, right? Well, the opposite. I'm accepting the judge's factual finding that Mr. Margolies lacked the subjective intent to cause injury. I accept that finding. And I think any further finding is entirely inconsistent with the record, but also with New York law, which says from Miller to City of Johnstown and on that the subjective intent of the insured is what controls. That should have been the end of the inquiry as a matter of law. If he lacked subjective intent to cause injury, that should have been the end of the inquiry. But I don't have a certain split in this nation about subjective or objective on substantial certainty tests. There is with respect to willfulness, Your Honor. And Judge Fela instructed Judge Bernstein to apply the subjective standard, and he did. The majority of circuits apply the subjective standard. The Sixth, the Eighth, the Ninth, and the Tenth Circuit all apply a subjective standard. The Fifth Circuit does not. The success — My finding was that once he refused — once he chose not to apply his breaks as he was coming upon your client, that the substantial certainty of injury was such that he had to have intended it. That is the finding, but it's based, we say, on a flawed legal analysis. It's flawed because to get there, you have to apply the successive state, which flies in the face of Judge — You have to apply the — The successive state of consciousness test that Judge Bernstein applied, a novel test that he applied based on the restatement. That — Well, it doesn't matter that circumstances can change over an event. You have to consider the totality of them, but you're not precluded from recognizing that they can evolve as the — as the occurrences change. I agree they can occur. The problem here, Your Honor, is that you can't break it into constituent parts. That's Messersmith. That's also the Supreme Court, Justice Ginsburg, writing for a majority in the Geiger case. She said expressly in that case that you couldn't break an accident into its component parts such that if you were just looking at the intentional act of turning the wheel left, that would be enough for a willful — for a willfulness finding. She said that would — that would render the — the standard meaningless. So it was wrong as a matter of law under both Geiger and Messersmith to do that. Also, Justice — Judge Fela, as well as USA, say that the sole fact that this successive state of consciousness, this final eureka moment of substantial certainty, was based entirely on a hypothetical question. Mr. Margulies asked Judge Bernstein, what did you think would happen if you did — if you proceeded, which is — which is entirely hypothetical because Mr. Margulies testified throughout. I thought Mr. Huff was going to move out of the way when I finally saw him. When I started, he wasn't in my way, and when I turned to the left, which was reckless, by the way, and then back to the right, which was reckless, by the way, I'm within a car length and closing in, reckless. At that moment, I still thought Mr. Huff was going to turn out of the way. And the Court accepted the hypothetical and based the sole fact, the linchpin of the successive consciousness, on that hypothetical. We say that was an error as a matter of law. Lastly, I would say that the inherently — I know we discussed this before, but deal with this anomaly. If we believed that this was an accident, it would have been discharged in bankruptcy, correct? Correct. So you'd be in pretty much the same position, wouldn't you? I would be under the coverage of USAA, and so I would be in — If some court found it was an accident, USAA would be put to their proof on what the policy covered. Correct. That's correct. But I think they wouldn't be put to — If it was discharged in bankruptcy, wouldn't you be left to recover, whether from the insurer or whomever, only the discounted amount, or what am I missing here? We would get the value of the policy, Your Honor. Why is that, if the claim is discharged? Because it would be an accident within the policy, and we stand in the shoes of Mr. Margulies as a result of the winning party. It's not dischargeable? I mean, I'm having a problem understanding what the concern here is. You obviously didn't want this discharged. If it were discharged, Your Honor, then we still stand in the shoes of Mr. Margulies with respect to USAA as a matter of contract, and we have coverage under that contract for an accident or occurrence. But Mr. Margulies would only owe you a discharged claim, or are you saying that the insurance policy somehow trumps the discharge? I'm not understanding you. We would collect the judgment up until the policy limits, Your Honor, and the remaining balance would be discharged. No further because of the discharge. Correct. I want to get back, Judge Raji, to your question of chicken, which I think is entirely what this was about. I agree with you. And chicken is a classic game of recklessness, and there's nothing that brings that more forth than the inherently intentional cases that we cite in our brief. It can't start as chicken and then evolve to something else. It can so long as it's not based on a hypothetical question, Your Honor. Thank you very much. Thank you. Counsel, you have two minutes. It seems like there's a lot of emphasis put on this question of whether he applied the brakes beforehand. And really what the tenor of it, the tenor of the arguments, is whether that was reasonable under the circumstances. That, however, is not the test. And so what I want to focus on is now I'm going to change gears a little bit, and I'm going to say even assuming that he purposely, that the bankruptcy court was correct in finding that he purposely did not apply the brakes beforehand, even that he had an opportunity to do so, that would not be tantamount to finding that the injury was willful and malicious. And the reason for that is that the bankruptcy court also found, and the testimony showed, that he didn't apply the brakes because, as Margulies said, he believed and he expected that Huff would move out of the way. Now, Your Honor's question, particularly yours, Judge Raj, which is why I'm looking at you for it, Your Honor's question suggests, but how is that reasonable? When a car is moving towards him, when this is a moving vehicle, how is it reasonable to believe that it wouldn't actually hit him in the end? And so I want to draw upon case law for that analogy. There is a case, Wood is the name of the case that's cited here, where the defendant drove over a tent at 6.15 in the morning. He did it because he had a personal vengeance or vendetta against the people who were at this particular campsite. And the question became whether he did that, whether he intended to cause injury by driving over the tent. What the Court reasoned was, even though he had good reason to believe at 6.15 in the morning the tent would be occupied, he said, I didn't know that there would be anyone in the tent. And so as a result of that, the Court found, well, if there is a possibility of no one being in the tent, then, in fact, there is a possibility that even though that was so reckless, even though it was unreasonable to believe that, nonetheless, it was not intentional, or translated to our argument, it was not willful and malicious. Another case, good example, a gun, Slaco. A person shoots a person in the abdomen, the defendant shoots a person in the abdomen with a gun. It happens because he pulls the trigger the first time and there's no discharge. And so the person who suffers the injury says, you should never point a gun at me, don't ever do that again. Well, then he goes and he points it at the abdomen and he pulls the trigger again. And lo and behold, the gun fires, and so the injured person is injured. In determining whether or not that was willful and malicious, whether that was accidental, whether that was intentional, the Court found it was not. And the reason that it was not was even though the act of pulling the trigger was clearly intentional, and even though it was so reckless, it was clearly reckless to do that. What do you think would happen if you pull a gun, if you pull a gun, if you pull the trigger to a gun? What do you think would happen if you drive over a person's tent in the morning? What do you think would happen if you set fire to a building? What do you think would happen? Yes, I do, Your Honor. But these are all from the cases. And in Giger, what would the doctor have thought would have happened if he terminated antibiotics before the infection was cleared? If the question is posed that way, then it's assuming a fact that is not in evidence and contrary to the findings of fact. Here, Margulies did not apply the break because he said he thought that Huff would move out of the way. And that's dispositive as to the willful and maliciousness. Now, there's one other point, and I recognize my time is up, but I think there's I realize that, Your Honor. There's just one small clarification I want to make. It's not enough for the district court's analysis that the substantial certainty test be deemed satisfied. The district court in order, the bankruptcy court, in order for the analysis to work also had to show that the inherent injury test was satisfied here. And they're two very different things, and I'm just getting from the tenor of the details. The district court found as a matter of fact that Mr. Margulies did not actually intend to make contact with Huff. In order to overcome that finding of fact, he said, you're right, he didn't intend to make contact with him, but there came a point where there was a substantial certainty that he knew that he would make contact. And we've already addressed that about the question of any reckless act. In fact, as Justice Cardozo said in Mesmersmith, at some point you get a substantial certainty it will happen. If I'm carrying a glass of water, I don't want to drop it, but at some point right before it slips out of my hand, I'm certain it's going to happen. And so you can't apply that test in that piecemeal fashion. And we've all argued that. But the second part of it, Your Honor, is that there's a second element to this. The court then found, okay, so he didn't intend to make contact, but it was substantially certain to occur. Now the question is, did he intend to injure? And to satisfy that, he had to apply the inherent injury test from Brafferty to say, and that's because in this case, like the push, a car going one mile per hour isn't necessarily, if he expected that Huff would move out of the way, if he expected even that the car might hit him or he thought that the car might hit him, he wouldn't expect an injury from that. The record evidence of that is? The record evidence of what? A car moving at that rate of speed would not inherently cause injury? It's the hypothetical example that the district court relied on. Once it actually asked Mr. Margolies specifically, what did you think would happen? And he said, I thought Huff... I didn't see any record evidence that indeed a car moving at that speed would not likely injure the person with whom it came into contact. Well, Your Honor, I guess that's just common sense from the standpoint of the car that is just in drive can be stopped by putting your hands on it. I think that when he's driving with a group of children. But again, Your Honor, that's not the standard as to injury. The inherent injury test specifically requires, in Rafferty the Court said, that it is a very narrowly defined exception. It's not meant to be applied commonly. It's only reserved for cases like rape, like child molestation, like malicious prosecution, where there's no possible way to have engaged in the act without intending the injury. That's the whole point of that doctrine. And that doctrine had to be satisfied, too. So neither substantial certainty was properly applied nor inherent injury. And looked at it as a whole, and this is my last sentence, as the Supreme Court mandates we must do, looked at it as a whole. All parties agree here, and all courts have agreed here, that Mr. Margolies' intent was to get to his meeting on time, to go around Huff, and not to hit him. Certainly not to injure him. And that is the end-all, be-all of the inquiry. Thank you. Thank you.